**CRITES et, Appellees v. FULTON (S. H. SQUIRE Substituted), Supt. of Banks, etc., Appellant et.**

Ohio Appeals, Ninth District, Summit County.

No. 3111.   Decided March 28, 1939.

Burroughs & Burroughs, Akron, for appellees.
Thomas J. Herbert, Attorney General, Columbus, and Fred E. Renkert, Special Counsel, Akron, for appellant.

## OPINION

By DOYLE, J.

This action was commenced in the Court of Common Pleas of Summit county by the plaintiffs therein, appellees here, E. F. Crites and Ralph Burroughs, executors of the estate of John F. Proehl, deceased, and proceeded against the superintendent of banks of the state of Ohio as liquidator of the property and assets of The First-Central Trust Co. of Akron, Ohio. The petitioners prayed in the action that "a trust be declared upon the assets of the bank for the payment of plaintiffs' claim"; that "a preference be declared for the payment of the claim," and that "the defendants * * * be required to allow plaintiffs a preferred claim in the liquidation of the defendant The First-Central Trust Co. in the sum of Four Thousand Dollars," together with interest at the rate of 6% per annum from March 10, 1933, "and for judgment for said preferred claim, for the payment of said claim, and for costs of this action and other equitable and proper relief."

The cause was heard in the trial court upon an agreed statement of facts. A judgment granting the prayer of plaintiff was rendered therein. The defendant superintendent has appealed to this court upon questions of law.

The facts of the case appear as follows: E. R. Crites and Ralph Burroughs at the start of this controversy and prior thereto were the executors of the estate of John F. Proehl, deceased. Crites conducted an insurance agency in Barberton, Ohio, and in connection with the agency kept a commercial bank account in the Barberton branch of the First-Central Trust Co. in the name of "E. F. Crites, agent." This account had no connection with other accounts kept in the same bank by Crites as co-executor of the estate of Proehl, deceased, and was used only as a convenience for his insurance agency. A part of the assets of the Proehl estate consisted of a house and lot. This house was insured against fire loss in The American Insurance Co. of Newark, N. J. It burned. Upon proof of loss the said fire insurance company forwarded its draft, payable through the Federal Reserve Bank of New York, at the National Newark and Essex Banking Co. of Newark, N. J.; the payees being the devisees of the said Proehl, deceased, The First-Central Trust Co. (as trustee), and the executors heretofore named. Proper endorsement was made by each of the payees.

Crites then caused the draft to be "deposited," along with

other déposits, in his "agency" account with the Barberton branch of the said First-Central Trust Co. In connection with this "deposit," I quote from the agreed statement of facts:

"On said 25th day of February, 1933, the stenographer in the office of plaintiff E. F. Crites, in the course of usual routine in the office and withut special instructions from said E. F. Crites, prepared a deposit slip in the usual form used in connection with said E. F. Crites, Agent, account, listing all the items in the office to go to the bank, and included in said slip a number of items which had come in and among other items said draft of $4,000.00, which had been originally mailed by the insurance company to E. F. Crites as insurance agent and by him mailed to Ralph Burroughs to secure indorsements of various devisees of John F. Proehl, who were payees, in accordance with the usual course of business in the estate, and after the securing of said indorsements had been mailed back to said E. F. Crites by the executor Ralph Burroughs who had sent it in for attention and banking pursuant to the usual course of business between the executors above described, said stenographer, without instructions, including said $4,000.00 in said deposit slip, instead of making a deposit slip for the executors' commercial account as she had regularly done with other estate items because it was a draft for a fire loss, and on the morning of said 25th day of February, 1933, said E. F. Crites in view of the presence of the draft for said $4,000.00 among said items and of his knowledge that said draft was a deferred item which would not immediately be available for credit like a check, himself took the slip and items listed thereon to the bank, instead of having the stenographer attend to this as she usually did, with the intention of withholding the item of said $4,000.000 from the deposit and of sending same through said bank as a special item for collection and upon his arrival at the branch bank so stated to said K. F. Sonnhalter, then in charge of said branch bank and then present at the bank, whereupon said K. F. Sonnhalter, acting in his capacity as manager of said branch bank, asked the plaintiff E. F. Crites not to send said draft through as a separate item for collection on account of the greater amount of work to the bank involved in so doing and suggested that the said E. F. Crites should put the draft through by depositing same in his commercial account.

"Thereupon the plaintiff E. F. Crites told said K. F. Sonnhalter that said draft was the draft belonging to the estate

of John F. Proehl, deceased, for the fire loss and did not belong to said E. F. Crites personally or in connection with his said agency business and told said K. F. Sonnhalter that he, the said E. F. Crites, would draw a check on the E. F. Crites Agent, account upon the collection and receipt of the proceeds from said draft to the order of the defendant The First-Central Trust Company, Trustee, in order to transfer said $4,000.00, the proceeds of said draft, to the trust department of said defendant to which plaintiffs were going to distribute the proceeds from said draft as a devisee and trustee under the will of said John F. Proehl, deceased, and it was thereupon agreed between said K. F. Sonnhalter, as manager of said Barberton branch bank of said The First-Central Trust Company and said E. F. Crites that said E. F. Crites should deposit said draft for $4,000.00 in his said 'E. F. Crites, Agent,' account, that said K. F. Sonnhalter would inform said E. F. Crites when the proceeds of said draft had been collected and were available in said checking account of E. F. Crites, Agent, to be checked against and that said E. F. Crites would draw no check against the deposit of said draft or against its proceeds in said account of E. F. Crites, Agent, until the proceeds of said draft had been actually received by said The First-Central Trust Company and were available in said account.

"Thereupon, said draft, pursuant to the said conversation and agreement, was deposited with said deposit slip and the other items mentioned thereon by the said E. F. Crites in said account of E. F. Crites, Agent, and was forwarded by said The First-Central Trust Company for collection."

Continuing with the facts we find that the bank, upon receipt of the draft, forwarded it through the usual channels for collection.

Collection was made and the money was available to The First-Central Trust Co. on March 7, but was not actually paid to it until March 22, 1933. However, on February 27, 1933, the general assembly of the state of Ohio passed, as an emergency measure, §§710-89 and 710-107a GC. Under authority of the latter section, the state superintendent of banks issued an order as of March 1, 1933, suspending payment on all deposit liability of the said First-Central Trust Co., excepting only one percent thereof. The order became effective at the close of business on March 1. In April a conservator was appointed for the bank, and on June 21 it was finally completely "taken over" by the superintendent of banks for liquidation.

From the facts stated, we conclude, in short, that Crites agreed with a responsible officer of the bank, Mr. K. F. Sonnhalter, that the bank would collect the draft in the manner suggested by the officer, and that when it was collected Crites would be notified, at which time he could draw upon the funds so collected; that before the draft was collected the bank was acting under orders of the superintendent of banks of the state of Ohio, whereby all payments on deposit liabilities were suspended excepting one percent thereof. This order was in compliance with §710-107a GC.

We further conclude that the legal relationship of principal and agent existed at the time the draft was "deposited" for collection, and continued at least until the bank was forced to go upon a drastic restriction of withdrawal basis by the state. Whatever the relationship was between then and the time at which the money was received by the bank, the relationship between the bank and the plaintiff at the latter time was that of trustee and cestui que trust. At no time was the relationship that of debtor and creditor.

At no time from the beginning of the transaction did Crites have a legal right to draw upon the deposit, because, under the circumstances, the relationship of debtor and creditor could not have arisen until the money was collected. This being so, what law governs the rights of "depositors" whose "deposits" (in the form of drafts, etc., for collection) are collected by a bank acting in the capicity of an agent, which bank has suspended payment to the extent of 99%, and such suspension of payment has become effective prior to the time that it was actually taken over for liquidation by the state?

As stated by the trial court, the money for the draft in question was not available to the bank until March 7, 1933, and in fact was not paid to the bank until March 22—which was 21 days after the bank ceased to function as a bank.

As stated further by the trial court, if the bank had been taken over for liquidation on March 1 or March 2, 1933, or had otherwise operated under supervision other than its own, and the money for the draft had thereafter come into the bank or to such supervisor thereof, there is no question but that the owners would have a preference, both on principle and by reason of §714 GC.

The trial court further found, upon authority of Levi v Bank, 5 Dill. (U. S.) 109, 110, as quoted in **Jones et v Kilbreth,**

**49 Oh St 401** at page 411, and the Jones case itself, that the date when a bank ceases the regular transaction of its business—in this case when the bank suspended to the extent of 99%, ceased to be a going bank, and no longer performed its functions as a bank—is determinative of the time when the relationship of principal and agent between a bank acting as collector of a draft, and the owner of the draft, terminates; and that in this case any money coming into the hands of the bank on the draft of Crites after March 1, 1933, came into its hands as trustee.

This court finds that the trial court did not err in its application of the law to the facts. The judgment as entered without interest will therefore be affirmed.

WASHBURN, P. J., and STEVENS, J., concur.